UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

GREG JAMES WARMKE,           )
                             )
        Plaintiff            )
                             )
v.                           ) 1:11-cv-00370-DBH
                             )
PATRICIA BARNHART,           )
                             )
        Defendant            )

**RECOMMENDED DECISION**

A jury convicted Greg Warmke of the murder of his ex-wife. Warmke and the deceased divorced in March 2002. The Law Court summarized the events leading to the murder conviction in State v. Warmke, 2005 ME 99, 879 A.2d 30. Warmke and his ex-wife had a troubled relationship and following their divorce Warmke became depressed, claiming he felt persecuted by his ex-wife's ongoing mistreatment of him. On May 2, 2003, Warmke confronted his ex-wife in the driveway of her home, brandishing a shotgun. He then held her hostage for three hours in her own home, ultimately shooting her when he perceived that she smirked at him. Warmke shot her in the torso, reloaded his gun, and shot her in the head.

On direct appeal Warmke's principal contention was that the trial court erred by refusing to instruct the jury on the defense of adequate provocation, which would reduce the murder charge to manslaughter. Id. ¶ 9, 879 A.2d at 33. Warmke's appeal was denied and Warmke then filed for post-conviction relief, raising primarily a claim of ineffective assistance of counsel based upon counsel's failure to secure a qualified expert witness who could testify on the issue of Warmke's claim of abnormal state of mind. Following the trial court's denial of Warmke's state post-conviction petition, the Maine Law Court issued a summary order denying a certificate of

probable cause to appeal from the Superior Court's denial of relief. The review of post-conviction matters is discretionary pursuant to 15 M.R.S. § 2131(1)(2009) and Rule 19 of the Maine Rules of Appellate Procedure.

On October 3, 2011, Warmke filed a timely petition in this Court pursuant to 28 U.S.C. § 2254, and then amended his petition on December 1, 2011, to supplement his claim of ineffective assistance of counsel. Warmke originally filed a petition containing four separate grounds (Doc. No. 1), the fourth ground being a catch-all ineffective assistance of counsel claim. In the supplemental pleading (Doc. No. 11) the ineffective assistance claim is expanded into seven somewhat redundant separate grounds. I conclude that Warmke has asserted claims in this Court as both ineffective assistance of counsel claims and straight-up constitutional challenges to his conviction on five separate bases: (1) claims related to Warmke's competence to stand trial; (2) claims related to the jury instruction on adequate provocation manslaughter; (3) a claim of ineffective assistance related to juror bias; (4) a claim of ineffective assistance because of counsel's failure to ask for a bifurcated trial; and (5) claims related to the failure of counsel to retain a "qualified" expert on the issue of mental abnormality or criminal responsibility. I now recommend that the Court deny the petition for the following reasons.

## DISCUSSION

### *Defendant's Competence to Stand Trial*

Warmke attempts to resurrect this issue in two separate grounds of his petition. In Ground One of his original petition he claims the trial court violated his substantive and procedural due process rights under the United States Constitution by allowing Warmke's trial to take place when he was incompetent. Warmke also alleges in Ground Three that his trial counsel was ineffective because he failed to obtain a full hearing on the issue of competence prior to trial.

In his supplemental pleading Warmke raises two claims of ineffective assistance related to this issue, redundantly claiming that counsel was ineffective because he "failed to protect my constitutional right to a 'full hearing as to my competence to stand trial.'" (Doc. No. 11 at 2, quoting unspecified portions of trial court transcripts.) In the second claim of his supplemental pleading Warmke claims that counsel was ineffective because he failed to seek an expert to oppose the State's forensic services finding that Warmke was indeed competent to stand trial.

The docket entries in this case reflect that following defendant's arraignment and entry of a plea of not criminally responsible by reason of insanity, the State moved for a mental examination. State v. Warmke, No. SKOSC-CR-2003-00276 (Me. Super. Ct., Som. Cty.). As a result of that examination a stage one report was filed with the court on October 31, 2003. Further examination in the nature of a stage two examination was ordered on November 19, 2003, with a stage two report being filed in two parts on January 26, 2004, and February 2, 2004. Both a psychiatrist and a psychologist prepared reports. Additional docket activity reveals that defense counsel obtained the services of a court-appointed psychologist for his own purpose, pursuant to an initial indigency[1] determination. The docket reflects the court paid the expert's bill for services.

The mental status examinations in the stage one and two format were conducted pursuant to 15 M.R.S. § 101-B (2003), repealed by P.L. 2009, ch. 268, § 1. The purpose of the permissive stage one examination was primarily to determine competency to stand trial. (Trial Tr. at 779, 802, 814.) Stage two examinations are mandatory if a defendant persists in maintaining a plea of not criminally responsible by reason of insanity or if there are other issues related to abnormal

---

[1] Trial counsel in this case was ultimately retained by Warmke's parents, even though Warmke himself qualified for indigent appointment of counsel. Testimony at the state post-conviction proceeding revealed that Warmke sought trial counsel's representation because counsel had previously represented him in a gross sexual assault trial that resulted in an acquittal. Warmke v. State of Maine, No. SKOSC-CR-2005-00422 (Me. Super. Ct., Som. Cty.) (Trial Tr. at 94). Trial counsel was an experienced criminal defense attorney.

3

conditions of the mind affecting guilt or criminal responsibility. 15 M.R.S. § 101-B(2) (2003). The trial transcript does not contain any testimony or suggestion that Warmke was incompetent to stand trial. The licensed psychologist who conducted the stage one examination reported that she "determined that Mr. Warmke was able to demonstrate the skills pertaining to competence to stand trial." (Trial Tr. at 814:22-23.) Furthermore, the record reflects that Warmke himself testified at his trial and, prior to testifying, spoke with the presiding justice regarding his right to testify or remain silent. (Id. at 502, 598-777.) I can find no mention at the trial court level or in the direct appeal of any issue in conjunction with Warmke's competence to stand trial nor any suggestion that his demeanor or testimony at trial raised any issue as to his competence.

In his *pro se* petition for state post-conviction review Warmke neither raised an issue regarding his competence to stand trial nor asserted a claim of ineffective assistance of counsel in relationship to this issue. However, his court appointed post-conviction counsel raised both a straight-up federal constitutional challenge regarding the Maine court's handling of the competence issue and a claim that trial counsel was ineffective because he failed to "protect Petitioner's right to a 'full hearing as to his competence to stand trial.'" (Mot. to Amend and Clarify *Pro Se* Petition at A., 1-4.) In his written submission, Warmke's post-conviction counsel acknowledged that the stage one evaluation had found Warmke competent to stand trial, but noted that defense counsel had a report from a jail counselor that indicated Warmke was in "a vegetatively depressed state and was suffering major depression, with psychotic features." (Id. at 2.) Other than his reference to this report, Warmke has not provided any argument or facts in support of his claim. Furthermore, there was no testimony at the post-conviction evidentiary hearing on the issue of competence or ineffective assistance related to a competency hearing. The post-conviction justice specifically found that "[a]t hearing petitioner failed to offer

evidence concerning the competence to stand trial issues and the Court denies the petition with regard to those claims, numbered 1-4 in the amended petition." (June 21, 2010, Order of Anderson, J., at 1.) In its order denying a certificate of probable cause to appeal from the Superior Court's finding, the Maine Law Court determined that no further action was necessary to a fair disposition of the matter (Order pursuant to Me. R. App. P. 12A(b)(4), dated November 24, 2010), thus making the Superior Court finding and order regarding issues related to competence the final word of the state court on this issue.

The State's approach to these competency-related issues is as follows: (1) the claim of a fourteenth amendment due process violation has never been exhausted because the Maine Law Court was never given an opportunity to address the issue and the matter is now procedurally defaulted under Baldwin v. Reese, 541 U.S. 27, 29 (2004), and (2) the claim of ineffective assistance of counsel based on counsel's failure to insure that there was a full hearing on the issue of competence with testimony from the jail counselor or another expert was raised in the context of the amended state post-conviction petition, but was never raised in the application to obtain discretionary review and, thus, is likewise procedurally defaulted. In essence this Court is left with the Superior Court's finding that the petitioner failed to offer evidence relating to competence-to-stand-trial issues as the finding which is "presumed to be correct," unless the petitioner can rebut this presumption of correctness with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Clements v. Clarke, 592 F.3d 45, 47 (1st Cir. 2010).

In his seventh ground in his supplement to his claims of ineffective assistance, Warmke seems to suggest that his post-conviction counsel's failure to challenge this finding by the Superior Court in the application for leave to bring a discretionary appeal was constitutionally ineffective and cause for his procedural default. (Petitioner's Supplements at 4, Doc. No. 11.)

5

Leaving aside the fact that there is currently no federal constitutional right to counsel in the context of state post-conviction proceedings, see Coleman v. Thompson, 501 U.S. 722, 752 (1991), there is simply nothing in this record that would cast any doubt on the correctness of the Superior Court's finding regarding the failure to present evidence on this issue. Nor is there anything in the record that raises any actual concern about Warmke's competence to proceed to trial or the inadequacy of the stage one competency evaluation. There is no suggestion that either trial counsel or post-conviction counsel performed in a constitutionally deficient manner. Strickland v. Washington, 466 U.S. 668, 687 (1984) (applying two-prong ineffective assistance of counsel standard, to show both deficient performance by counsel and resulting prejudice). Counsel's failure to offer evidence on this issue at the post-conviction proceeding is explained by the simple fact that there is no evidence to suggest that Warmke was incompetent to proceed. Warmke's chosen psychological expert, Geoffrey Thorpe, who testified at the post-conviction proceeding, did not find anything remarkable in the stage one examination related to competency to stand trial. (Tr. at 13-16.) Thorpe concentrated his attention on issues pertaining to criminal responsibility and abnormal condition of the mind. Likewise, the jail counselor, Edward Robeau, who testified at Warmke's trial, did not raise any concerns about his competence to proceed. Both Thorpe and Robeau testified about Warmke's state of mind at the time of the offense, attempting to negate his criminal responsibility, not his competence to proceed.

### *Adequate Provocation Manslaughter Instruction*

Ground Two of Warmke's petition is a general claim that the decisions (unspecified) of the state trial, appellate, and post-conviction courts were unreasonable under 28 U.S.C. § 2254(d). Warmke's minimal elaborations consist of a statement that "[t]his ground was based on the results of the direct appeal process and subsequent State court procedures used to exhaust

claims." (Doc. No. 1 at 7.) Clearly the adequacy of the jury instructions regarding the lesser included offense was raised at trial and in the direct appeal. The error that Warmke now claims is that the failure to give a jury instruction on the lesser included offense of manslaughter was not raised as a federal constitutional issue on appeal and therefore counsel was ineffective. (Petitioner's Supplements at 4, 6, Doc. No. 11.) The State agrees that the issue of the adequacy of jury instructions was only raised in the state courts in the context of statutory construction under 17-A M.R.S. § 201(3), the adequate provocation manslaughter affirmative defense, and thus concludes that the constitutional issue has not been properly preserved. (Response to Petitioner's Supplements at 3, ¶ 6, Doc. No. 12.) Accordingly, this ground must be dismissed under Baldwin v. Reese, as noted earlier.

Counsel's failure to frame this question as a federal constitutional issue makes no difference in terms of prejudice because clearly established Supreme Court precedent relating to jury instructions involving lesser included offenses, Hopper v. Evans, 456 U.S. 605, 611 (1982), holds that States are not constitutionally required to instruct juries about lesser included offenses where such instructions are not warranted by the evidence, essentially the same standard used by the Maine Law Court in Warmke's case. State v. Warmke, 2005 ME 99, ¶ 12, 879 A.2d at 34. Even if the federal constitutional claim were not procedurally defaulted, the Law Court's decision is not "an unreasonable application of" or "contrary to" federal law as determined by the United States Supreme Court. As Warmke apparently understands, his section 2254 petition cannot be granted unless the state court decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state

court's decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 404-06 (2000). "[A]n unreasonable application of federal law is different from an *incorrect* application of federal law." Id. at 410 (emphasis in original). The import of this distinction is that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Nothing about the Law Court decision was either erroneous or unreasonable that I can ascertain. The Law Court's conclusions that the history of domestic discord was insufficient to generate an adequate provocation defense and that Warmke had the burden of proving he did not initiate the event that provoked his extreme anger does not offend any constitutional principle. Warmke v. State, 2005 ME 99, ¶¶ 14 15, 879 A.2d at 34. That conclusion was certainly not an unreasonable application of clearly established Supreme Court precedent nor was it an unreasonable determination of the facts of record in this case.

### *Three Remaining Ineffective Assistance Claims*

Warmke claims ineffective assistance based on his counsel's failure to act regarding juror bias, failure to seek a bifurcated trial, and failure to hire a "qualified" expert on the issue of abnormal condition of mind/criminal responsibility. To succeed on a claim of ineffective assistance of counsel, Warmke must show both deficient performance by counsel and resulting prejudice. Strickland, 466 U.S. at 687. In order to satisfy the "deficient performance" prong, Warmke must show that his trial counsel's representation "fell below an objective standard of

8

reasonableness." Id. at 688. Review of counsel's performance must be deferential, and reasonableness must be considered in light of "prevailing professional norms." Id. at 688-89. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and Warmke "must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). The First Circuit Court of Appeals has held that a lawyer's performance is deficient under Strickland "only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) (quoting Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006)).

Warmke now claims his trial counsel was ineffective by failing to inquire into potential juror bias. During the jury selection process, one of the jurors indicated to the Court that his boss's daughter was Juror 39, and that possibly that fact could affect the juror's freedom to speak during jury deliberations. (Trial Tr. at 11.) This issue was raised in the amended state post-conviction petition, albeit in reference to a different juror's number than the one noted in the transcript. Ultimately the jury as seated (Trial Tr. at 249), following a lengthy jury voir dire that stretched into a second day, did not include juror 78, whose juror number had been noted by the Court as possibly being affected by juror 39 during jury selection. Nevertheless, the transcript testimony reveals that it was possibly juror 133 (or 67) who could have been affected by juror 39's presence on the jury. (Trial Tr. at 10-12). In any event, the jury as finally constituted consisted of jurors 133 and 39, and both jurors concurred in the guilty verdict. (Trial Tr. at 911-912.) As the State notes, Warmke's post-conviction counsel presented no evidence regarding this claim during the post-conviction review evidentiary hearing and there is no reason to view this claim as other than procedurally defaulted. (Response to Pet.'s Supplements at 2-3, Doc.

No. 12.) There are no facts developed in state court or in this court to suggest any basis for this claim.

The Superior Court, during its post-conviction review, noted that Warmke had preserved the issue of ineffective assistance of counsel "in not choosing a bifurcated trial as opposed to a unitary one." (June 21, 2010, Order of Anderson, J., at 1.) However, as the order further notes, petitioner failed to provide any support for the proposition that he would have been better served by a bifurcated trial than a unitary one. State post-conviction counsel's discussion with the Court on this topic during argument following the post-conviction hearing is found at pages 150 and 151 of the transcript of the hearing of March 23, 2010. Warmke did not properly exhaust this claim by presenting it to the Maine Law Court in his counsel's memorandum in support of a certificate of probable cause to appeal the denial of his state post-conviction petition. Baldwin, 541 U.S. at 29. Even if he had properly preserved this ground, the state Superior Court's rejection of these claims was not an objectively unreasonable application of Strickland v. Washington for the reasons articulated during oral argument at the state post-conviction proceeding: "By the time the jury would have deliberated on criminal responsibility, they would've heard everything else anyway." (Tr. at 151.)

Finally, there remains one ground of ineffective assistance of counsel that was fully exhausted in the state courts and that is properly before this Court to consider on its merits. Warmke asserts that his counsel was ineffective in not retaining a qualified expert for trial testimony concerning the defendant's lack of criminal responsibility and abnormal condition of mind. Instead, trial counsel chose to rely upon the testimony of a licensed social worker who treated the defendant in the jail. Trial counsel believed that the social worker's lack of credentials could be overcome by the sincerity of his testimony and the fact that he was not a

10

highly-paid retained expert. Trial counsel had consulted with a recognized psychological expert, Dr. Charles Robinson, and Robinson had told him that his testimony would not be helpful to the defense. The state post-conviction justice concluded that trial counsel "had no realistic alternative" but to proceed with his jailhouse counselor. (June 21, 2010, Order of Anderson, J., at 9.)

The fact that post-conviction counsel found a retained expert who was willing to testify at the post-conviction, without having examined or treated the defendant, that there were avenues of inquiry that might be pursued in fashioning a defense did not change the post-conviction court's analysis. The state post-conviction court "reject[ed] the notion that to be effective, an attorney must retain successive experts until one is found who takes a position favorable to the defense." That decision was not contrary to, and did not involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Nor was it "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In fact, the post-conviction decision represents a reasonable application of the standards set forth in Strickland v. Washington given the facts and circumstances of this case. Counsel was not ineffective in proceeding in the manner he chose given the investigation he had done and the apparent unwillingness of a highly respected psychological expert to provide testimony favorable to the defense.

## Conclusion

For the reasons stated above, I recommend that the Court deny Warmke relief under 28 U.S.C. § 2254, with prejudice, and dismiss the petition. I further recommend that a certificate of appealability should not issue in the event Warmke files a notice of appeal because there is no

substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

Dated: March 6, 2012          /s/ Margaret J. Kravchuk
                              U.S. Magistrate Judge